# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP1422-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Zachary T. Krogman, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant, |
| | v. |
| | Zachary T. Krogman, Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST KROGMAN

| | |
|---|---|
| OPINION FILED: | December 23, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, A.W. BRADLEY, J.J., dissent. (Opinion Filed) |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2015AP1422-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings
Against Zachary T. Krogman, Attorney at Law:**

**Office of Lawyer Regulation,**

      **Complainant,**

    **v.**

**Zachary T. Krogman,**

      **Respondent.**

**FILED**

**DEC 23, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1  PER CURIAM. We review a stipulation pursuant to Supreme Court Rule (SCR) 22.12 between the Office of Lawyer Regulation (OLR) and Attorney Zachary T. Krogman. In the stipulation, Attorney Krogman agrees with the OLR's position that his misconduct warrants the imposition of a four-month suspension of his license to practice law in Wisconsin. Attorney Krogman also agrees with the OLR's position that

certain conditions should be imposed upon the reinstatement of his license to practice law in Wisconsin.

¶2 After fully reviewing the stipulation and the facts of this matter, we accept the stipulation and impose the four-month suspension jointly requested by the parties. We also find it appropriate to impose the recommended conditions upon the reinstatement of Attorney Krogman's license to practice law. Finally, in light of the parties' stipulation and the fact that no referee needed to be appointed, we do not impose any costs upon Attorney Krogman.

¶3 Attorney Krogman was admitted to practice law in Wisconsin in 2011 and practices in Stevens Point. He has no prior disciplinary history.

¶4 On July 16, 2015, the OLR filed a complaint alleging 22 counts of professional misconduct. On September 18, 2015, Attorney Krogman entered into a stipulation whereby he agrees that the factual allegations in the OLR's complaint are accurate and that he committed the professional misconduct charged in the complaint. The stipulation states that Attorney Krogman fully understands the nature of the misconduct allegations against him, his right to contest those allegations, and the ramifications that would follow from this court's imposition of the stipulated level of discipline. The stipulation also indicates that Attorney Krogman understands his right to counsel. Attorney Krogman verifies that he is entering into the

2

stipulation knowingly and voluntarily and that his entry into the stipulation represents his decision not to contest this matter.

Matter of T.M. (Counts 1-5)

¶5 In July 2013, T.M. hired Attorney Krogman to represent him in a divorce action. Attorney Krogman filed a summons and petition in the case. The court scheduled a temporary hearing for November 4, 2013, and a stipulated divorce hearing for February 10, 2014. T.M.'s wife did not appear for the temporary hearing, so the hearing could not proceed. On November 6, 2013, Attorney James Kurth notified Attorney Krogman that Attorney Kurth represented T.M.'s wife. Between December 2013 and February 2014, T.M. left multiple telephone messages for Attorney Krogman and sent him multiple emails asking that Attorney Krogman communicate with him about the status of the case. Attorney Krogman failed to respond. Attorney Krogman also failed to respond to Attorney Kurth's requests for a copy of T.M.'s financial disclosure statement.

¶6 On February 7, 2014, Attorney Krogman admitted himself to a medical treatment facility for in-patient treatment. On February 10, 2014, the day of the scheduled divorce hearing, Attorney Krogman's mother-in-law and legal assistant told T.M. by phone that Attorney Krogman would be unable to appear at the hearing because he was having medical problems and would be out of the office for four to six weeks. T.M. hired successor

3

counsel to represent him in the divorce action. While representing T.M., Attorney Krogman disbursed advanced fees from his trust account without providing T.M. with the required written notice at least five days prior to removing the funds. Attorney Krogman failed to file a timely response to the OLR's requests for information regarding the grievance T.M. filed against Attorney Krogman.

¶7 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Krogman's representation of T.M.:

[Count 1] By failing to advance [T.M.'s] interests in obtaining a timely divorce, including by: (i) failing to timely effect service on the opposing party; (ii) failing to provide a financial disclosure statement to opposing counsel; and/or, (iii) failing to timely take the steps necessary to engage in settlement discussions with opposing counsel, Krogman violated SCR 20:1.3.[1]

[Count 2] By failing to adequately communicate with [T.M.] regarding the status of his case, Krogman violated SCR 20:1.4(a)(3).[2]

[Count 3] By failing to timely respond to [T.M.'s] attempts to obtain information regarding his case, Krogman violated SCR 20:1.4(a)(4).[3]

---

[1] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[2] SCR 20:1.4(a)(3) provides that a lawyer shall "keep the client reasonably informed about the status of the matter."

[3] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information."

4

[Count 4]  By disbursing advanced fees from trust without first providing [T.M.] with timely written notice of his intent to do so, Krogman violated SCR 20:1.15(g)(1).[4]

[Count 5]  By failing to timely provide the information and records requested by OLR's March 13, 2014 and April 24, 2014, letters, Krogman violated SCR 22.03(2)[5] and SCR 22.03(6),[6] enforceable via SCR 20:8.4(h).[7]

---

[4] SCR 20:1.15(g)(1) provides:

At least 5 business days before the date on which a disbursement is made from a trust account for the purpose of paying fees, with the exception of contingent fees or fees paid pursuant to court order, the lawyer shall transmit to the client in writing all of the following:

a. an itemized bill or other accounting showing the services rendered;

b. notice of the amount owed and the anticipated date of the withdrawal; and

c. a statement of the balance of the client's funds in the lawyer trust account after the withdrawal.

[5] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer

(continued)

*Matter of B.Y. and B.Y. (Counts 6-9)*

¶8 In January 2013, B.Y. and her husband, B.Y., hired Attorney Krogman to represent them in facilitating Mr. Y.'s adoption of Mrs. Y.'s minor daughter. The Y.s and Attorney Krogman entered into a written advanced fee agreement. The child's father signed the advanced fee agreement as guarantor and paid Attorney Krogman an initial advanced fee of $500. The parties agreed that Attorney Krogman would directly bill the child's father related to Attorney Krogman's representation of the Y.s. Attorney Krogman filed a petition for termination of parental rights and a petition for adoptive placement in Wood County Circuit Court.

¶9 The Y.s moved to Sauk County before a required home study could be arranged. In April 2013, Attorney Krogman sent the Y.s a petition for adoption, petition for termination of

---

questions, furnish documents, and present any information deemed relevant to the investigation.

[6] SCR 22.03(6) provides that "[i]n the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[7] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

parental rights, and related documents, to be filed in Sauk County, for their review and signature. On April 30, 2013, Attorney Krogman sent the child's father a letter, with a copy sent to the Y.s, saying that since Attorney Krogman had not received monthly payments on the outstanding balance, he would need to terminate representation in the matter. Attorney Krogman received $125 from the child's father on August 25, 2013. In September 2013, Attorney Krogman resumed representation of the Y.s. Attorney Krogman failed to file the petition for adoption and petition for termination of parental rights with the Sauk County Circuit Court and took no further action in the case. The Y.s hired successor counsel to represent them.

¶10 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Krogman's representation of the Y.s:

> [Count 6] By failing after December 10, 2013 to advance the [Y.s'] interests in securing [Mr. Y's] adoption of the minor child, Krogman violated SCR 20:1.3.
>
> [Count 7] By failing to respond to the [Y.s'] requests for information after December 10, 2013, Krogman violated SCR 20:1.4(a)(4).
>
> [Count 8] By disbursing advanced fees from trust without first timely providing the [Y.s] and/or [the child's father] with written notice of his intent to do so, Krogman violated SCR 20:1.15(g)(1).
>
> [Count 9] By failing to timely provide the information and records requested by OLR's March 13,

7

2014, and April 24, 2014, letters, Krogman violated SCR 22.03(2) and SCR 22.03(6), enforceable via SCR 20:8.4(h).

Matter of J.L. (Count 10)

¶11 In April 2014, J.L. hired Attorney Krogman to represent her in her pending divorce action. J.L. and Attorney Krogman entered into a written advanced fee agreement. J.L. paid Attorney Krogman an initial advanced fee of $1,000. Attorney Krogman drafted and circulated a stipulation and temporary order to be filed with the court, and he sent J.L.'s husband discovery requests and a blank financial disclosure statement. On June 2, 2014, the Board of Bar Examiners (BBE) suspended Attorney Krogman's license to practice law in Wisconsin due to his failure to comply with continuing legal education (CLE) reporting requirements. Attorney Krogman failed to notify J.L. of his suspension, and he failed to notify the court of the suspension until December 22, 2014.

¶12 The OLR's complaint set forth the following count of misconduct with respect to Attorney Krogman's representation of J.L.: "[Count 10] By disbursing advance fees from trust without first timely providing [J.L.] with written notice of his intent to do so, Krogman violated SCR 20:1.15(g)(1)."

Matter of G.B. (Counts 11-13)

¶13 In April 2014, G.B. hired Attorney Krogman to represent him in appealing an order modifying child support. Attorney Krogman provided G.B. with a written advanced fee

agreement, which G.B. did not sign.  G.B. paid Attorney Krogman an advanced $500 fee by credit card.  Attorney Krogman filed a motion for and notice of new (de novo) hearing with the court on G.B.'s behalf and contacted the court to schedule a hearing on the motion.  On May 1, 2014, Attorney Krogman sent G.B. a letter requesting an additional $312.50 in advanced fees, which G.B. paid by credit card on May 8, 2014.  Attorney Krogman took no further action on G.B.'s case.  Attorney Krogman failed to notify G.B. that his license to practice law in Wisconsin was suspended on June 2, 2014, nor did he notify the court of his suspension until November 24, 2014.  Attorney Krogman failed to respond to numerous phone calls from G.B. inquiring about the status of the case.  Attorney Krogman failed to appear at a scheduling conference and did not advise G.B. that he could not appear or that G.B. should be prepared to represent himself or seek alternate legal representation.  Attorney Krogman likewise did not notify opposing counsel or the court that he did not intend to appear at the scheduling conference.

¶14 The OLR's complaint alleged the following counts of misconduct with respect to Attorney Krogman's representation of G.B.:

> [Count 11]  By failing to advise [G.B.] that he could not appear for the July 17, 2014, Scheduling Conference and that [G.B.] should be prepared to

9

represent himself or seek alternative legal representation, Krogman violated SCR 20:1.16(d).[8]

[Count 12] By disbursing advanced fees from trust without first timely providing [G.B.] with written notice of his intent to do so, Krogman violated SCR 20:1.15(g)(1).

[Count 13] By failing to timely provide the information and records requested by OLR's August 15, 2014 and September 17, 2014 [letters], Krogman violated SCR 22.03(2) and SCR 22.03(6), enforceable via SCR 20:8.4(h).

Matter of J.N. (Count 14)

¶15 On November 14, 2013, Attorney Krogman represented J.N. at a final divorce hearing in Marathon County Circuit Court. Following the hearing, Attorney Krogman was responsible for submitting the divorce paperwork. He neglected to file most of the documents.

¶16 The OLR's complaint alleged the following count of misconduct with respect to Attorney Krogman's representation of J.N.: "[Count 14] By failing between November 14, 2013 and

---

[8] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

June 2, 2014, to file the Findings of Fact, and related documents [in J.N.'s divorce case], Krogman violated SCR 20:1.3."

Misconduct Related to License Suspension (Counts 15-18)

¶17 Prior to June 2, 2014, Attorney Krogman received written notice from the BBE that his license would be suspended on June 2, 2014, if he failed to comply with CLE reporting requirements for the 2012-13 reporting period. Attorney Krogman failed to comply with the CLE reporting requirements and his license to practice law in Wisconsin was suspended on June 2, 2014. Attorney Krogman failed to send written notice of his suspension, by certified mail, to any of his clients in pending matters. He also failed to timely send written notice of his suspension and inability to act as an attorney to any opposing counsel or courts in pending matters.

¶18 The OLR's complaint alleged the following counts of misconduct related to Attorney Krogman's June 2, 2014 license suspension:

> [Count 15] By failing to advise his clients with hearings scheduled for after June 2, 2014, that he could not appear with them or on their behalf, and that they should be prepared to represent themselves or seek alternative legal representation, Krogman violated SCR 20:1.16(d).

> [Count 16] By failing to provide written notice to all of his clients with pending matters that his license to practice law had been suspended on June 2,

11

2014, and that they should seek legal advice elsewhere, Krogman violated SCR 22.26(1)(a) and (b).[9]

[Count 17]    By failing to promptly provide written notice to all opposing counsel and courts in which he was representing clients in pending matters that his license to practice law had been suspended on June 2, 2014, Krogman violated SCR 22.26(1)(c).[10]

[Count 18]    By practicing law in Wisconsin at a time when his license to practice law was suspended, Krogman violated SCR 22.26(2).[11]

_____

[9] SCR 22.26(1)(a) and (b) provide that, on or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall "[n]otify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation," and shall "[a]dvise the clients to seek legal advice of their choice elsewhere."

[10] SCR 22.26(1)(c) provides that, on or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall:

Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

[11] SCR 22.26(2) provides:

An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other

(continued)

12

Misconduct Related to Failure to Hold Funds in Trust and Conversion (Counts 19-22)

¶19 Between October 31, 2013, and July 10, 2014, Attorney Krogman improperly took over $2,500 from his clients' trust accounts, funds to which he was not entitled, including by paying bank fees with client funds. He began accepting credit card payments for legal fees in November 2012 but never established a separate trust account for receiving legal fees and costs by credit card, debit card, or other electronic deposit. Attorney Krogman failed to keep transaction registers required by the Rules of Professional Conduct, failed to keep individual client ledgers, failed to keep required deposit records, failed to complete the memo line on checks, and failed to prepare regular and periodic reconciliation reports. The OLR's complaint alleged the following counts of misconduct:

> [Count 19] By converting to his personal use $2,137.50 of client funds held in trust on February 6, 2014, Krogman violated SCR 20:8.4(c).[12]

> [Count 20] By failing to hold funds [of] clients in trust, separate from his own property, including converting to his personal use $2,137.50 of client

---

paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

[12] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

13

funds held in trust on February 6, 2014, Krogman violated SCR 20:1.15(b)(1).[13]

[Count 21] By depositing $6,463.52 into his Trust Account via 12 credit card deposits between September 5, 2013, and December 4, 2014, Krogman violated SCR 20:1.15(e)(4)e.[14]

[Count 22] By failing to comply with trust account record-keeping requirements as follows:

(a) By failing from January 1, 2014, through July 22, 2014, to keep a transaction register that contained a chronological record of all account transactions and included the date, source and amount of all deposits, the check number of all disbursements, the identity of the client for whom funds were deposited or disbursed, the date and amount of every deduction of whatever nature, and the balance in the account after each transaction;

(b) by failing to record each receipt and disbursement of client funds for his IOLTA checking account in individual client ledgers;

(c) by failing to identify the client or client matter associated with each deposit item on 26 of 28 deposit slips between September 5, 2013, and

---

[13] SCR 20:1.15(b)(1) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[14] SCR 20:1.15(e)(4)e. provides that "[a] lawyer shall not authorize transactions by way of credit card to or from a trust account. However, earned fees may be deposited by way of credit card to a lawyer's business account."

14

December 4, 2014, and by failing to identify the name of the account on 22 of those 28 deposit slips;

(d) by leaving the memo line blank on 28 of 34 checks written on his Trust Account during the same period;

(e) by failing to prepare any Trust Account reconciliation report for at least eight months from October 2013 through June 2014,

Krogman violated SCR 20:1.15(f)(1).[15]

---

[15] SCR 20:1.15(f)(1) provides:

Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:

a. Transaction register. The transaction register shall contain a chronological record of all account transactions, and shall include all of the following:

1. the date, source, and amount of all deposits;

2. the date, check or transaction number, payee and amount of all disbursements, whether by check, wire transfer, or other means;

3. the date and amount of every other deposit or deduction of whatever nature;

4. the identity of the client for whom funds were deposited or disbursed; and

5. the balance in the account after each transaction.

b. Individual client ledgers. A subsidiary ledger shall be maintained for each client or 3rd party for

(continued)

15

whom the lawyer receives trust funds that are deposited in an IOLTA account or any other pooled trust account. The lawyer shall record each receipt and disbursement of a client's or 3rd party's funds and the balance following each transaction. A lawyer shall not disburse funds from an IOLTA account or any pooled trust account that would create a negative balance with respect to any individual client or matter.

c. Ledger for account fees and charges. A subsidiary ledger shall be maintained for funds of the lawyer deposited in the trust account to accommodate monthly service charges. Each deposit and expenditure of the lawyer's funds in the account and the balance following each transaction shall be identified in the ledger.

d. Deposit records. Deposit slips shall identify the name of the lawyer or law firm, and the name of the account. The deposit slip shall identify the amount of each deposit item, the client or matter associated with each deposit item, and the date of the deposit. The lawyer shall maintain a copy or duplicate of each deposit slip. All deposits shall be made intact. No cash, or other form of disbursement, shall be deducted from a deposit. Deposits of wired funds shall be documented in the account's monthly statement.

e. Disbursement records.

1. Checks. Checks shall be pre-printed and prenumbered. The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check. Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name. Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.

(continued)

2. Canceled checks. Canceled checks shall be obtained from the financial institution. Imaged checks may be substituted for canceled checks.

3. Imaged checks. Imaged checks shall be acceptable if they provide both the front and reverse of the check and comply with the requirements of this paragraph. The information contained on the reverse side of the imaged checks shall include any endorsement signatures or stamps, account numbers, and transaction dates that appear on the original. Imaged checks shall be of sufficient size to be readable without magnification and as close as possible to the size of the original check.

4. Wire transfers. Wire transfers shall be documented by a written withdrawal authorization or other documentation, such as a monthly statement of the account that indicates the date of the transfer, the payee, and the amount.

f. Monthly statement. The monthly statement provided to the lawyer or law firm by the financial institution shall identify the name and address of the lawyer or law firm and the name of the account.

g. Reconciliation reports. For each trust account, the lawyer shall prepare and retain a printed reconciliation report on a regular and periodic basis not less frequently than every 30 days. Each reconciliation report shall show all of the following balances and verify that they are identical:

1. the balance that appears in the transaction register as of the reporting date;

2. the total of all subsidiary ledger balances for IOLTA accounts and other pooled trust accounts, determined by listing and totaling the balances in the individual client ledgers and the ledger for account fees and charges, as of the reporting date; and

(continued)

¶20 In the stipulation, Attorney Krogman agrees that it would be appropriate for this court to impose a four-month suspension of his license to practice law in Wisconsin. He further agrees that it would be appropriate for this court to impose the following conditions upon the reinstatement of his license to practice law in Wisconsin:

- Within 60 days of the Court's final order, Attorney Krogman must provide to OLR signed medical releases of confidentiality for each treatment provider who has provided or is providing alcohol-related or substance abuse-related treatment, assessment or services to Attorney Krogman during the past five years, so that OLR and each provider can share pertinent information related to Attorney Krogman, such releases to remain in effect for two years from the date Attorney Krogman signs the releases.

- Within 60 days of the Court's final order, Attorney Krogman must, at his own expense, participate in an alcohol and other drug abuse (AODA) and mental health assessment by a person of OLR's choosing, which shall make specific written recommendations, if appropriate, for Attorney Krogman's treatment or maintenance. The assessment must be provided to OLR.

- Attorney Krogman must submit to monitoring within 30 days of the date of the assessment, as directed by OLR; and for a period of two years beginning on the date of his entry into a

---

3. the adjusted balance, determined by adding outstanding deposits and other credits to the balance in the financial institution's monthly statement and subtracting outstanding checks and other deductions from the balance in the monthly statement.

18

> monitoring program must comply with all monitoring requirements, including all requirements determined to be appropriate by the Wisconsin Lawyers' Assistance Program (WisLAP) or OLR's designated monitor.
>
> - Attorney Krogman must refrain from the consumption of alcohol and any mood-altering drugs without a valid prescription while subject to monitoring[.]

¶21 Having considered this matter, we approve the stipulation and adopt the stipulated facts and legal conclusions of professional misconduct. From our independent review of the matter, we agree that a four-month suspension of Attorney Krogman's license to practice law in Wisconsin is an appropriate sanction. We note that the OLR's memorandum in support of the stipulation identifies a number of aggravating and mitigating factors. With respect to aggravating factors, the OLR points out that Attorney Krogman engaged in dishonest conduct with selfish motives, that he committed similar misconduct in several different matters, and that he failed to cooperate in several matters. As mitigating factors, the OLR director found that Attorney Krogman had no prior disciplinary record. In addition, Attorney Krogman's misconduct occurred during a period of time immediately prior to checking himself into an in-patient facility for treatment of alcohol abuse and depression, or in the year after his in-patient treatment. The OLR says there seems to be a potentially causal relationship between Attorney Krogman's alcohol abuse and/or depression and some of the

19

misconduct outlined above; however, not all of the misconduct can be causally linked to his mental health issues.  The OLR also points out that once he was served with the disciplinary complaint, Attorney Krogman was fully cooperative, and he has advised the OLR that he is no longer practicing law and is in the process of closing down his law practice.

¶22  Although no two factual situations are precisely the same, a four-month suspension is generally consistent with the sanction imposed in somewhat similar cases, including In re Disciplinary Proceedings Against Smead, 2010 WI 4, 322 Wis. 2d 100, 777 N.W.2d 644 (attorney's license suspended for 120 days for 25 counts of misconduct); In re Disciplinary Proceedings Against Tobin, 2007 WI 50, 300 Wis. 2d 250, 730 N.W.2d 896 (attorney's license suspended for four months for misconduct including trust account violations, conversions, and false statements to the OLR).  We further find it appropriate to impose the recommended conditions upon the reinstatement of Attorney Krogman's license to practice law.  Because Attorney Krogman entered into a comprehensive stipulation under SCR 22.12, thereby obviating the need for the appointment of a referee and a full disciplinary proceeding, we do not impose any costs in this matter.

¶23  IT IS ORDERED that the license of Zachary T. Krogman to practice law in Wisconsin is suspended for four months, effective January 22, 2016.

20

¶24 IT IS FURTHER ORDERED that the reinstatement of Zachary T. Krogman's license to practice law in Wisconsin is conditioned upon the following:

- Within 60 days of the date of this order, Attorney Krogman shall provide the Office of Lawyer Regulation with signed medical releases of confidentiality for each treatment provider who is providing or has provided to Attorney Krogman within the last five years treatment, assessment, or services related to alcohol or substance abuse, such releases to remain in effect for two years from the date of signature.

- Within 60 days of the date of this order, Attorney Krogman shall, at his own expense, participate in an alcohol and other drug abuse and mental health assessment by a person of the Office of Lawyer Regulation's choosing; the assessment shall make specific written recommendations, if appropriate, for Attorney Krogman's treatment or maintenance and shall be provided to the Office of Lawyer Regulation.

- Within 30 days of the date of the assessment specified above, Attorney Krogman shall submit to monitoring as directed by the Office of Lawyer Regulation, and he shall comply with all monitoring

requirements, including all requirements deemed appropriate by the Wisconsin Lawyers' Assistance Program or other monitor designated by the Office of Lawyer Regulation, for a period of two years from his entry into a monitoring program.

- Attorney Krogman shall refrain from the consumption of alcohol and any mood-altering drugs without a valid prescription while subject to monitoring.

¶25 IT IS FURTHER ORDERED that Zachary T. Krogman shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.

¶26 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

22

¶27 SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. I write in dissent in several attorney discipline cases because I have concerns about the discipline imposed.

¶28 In the instant case, upon stipulation admitting the factual allegations, the court orders a four-month suspension of Attorney Krogman's license and conditions upon reinstatement. The complaint alleged 22 counts of professional misconduct involving four clients, misconduct relating to license suspension, and misconduct relating to trust accounts. The four-month suspension seems too light.

¶29 I write in dissent because I also have difficulty reconciling the significantly different levels of discipline imposed in the following four cases.

- OLR v. Crandall, 2015 WI 111, ___ Wis. 2d ___, ___ N.W.2d ___: Attorney Crandall has been disciplined four times previously: a three-month suspension, a public reprimand, a 30-day suspension, and a five-month suspension. This court now imposes another public reprimand in his fifth brush with the OLR. The sanction is too light. The principle of progressive discipline should have been applied. It was not.

- OLR v. Boyle, 2015 WI 110, ___ Wis. 2d ___, ___ N.W.2d ___: Boyle committed six offenses, including two trust account violations. The court imposes a 60-day suspension plus conditions. Boyle had received three private reprimands between 2002 and 2012. How

1

can this level of discipline be justified in light of OLR v. Crandall and OLR v. Sayaovong (see below)?

- OLR v. Aleman, 2015 WI 112, ___ Wis. 2d ___, ___ N.W.2d ___: Illinois imposed a two-year suspension for two counts of misconduct stemming from co-founding and working with a national debt settlement firm. Upon stipulation of the parties, this court orders reciprocal discipline in Wisconsin. The two-year suspension seems too harsh compared to the discipline imposed in other cases.

- OLR v. Sayaovong, 2015 WI 100, 365 Wis. 2d 200, 871 N.W.2d 217: This per curiam was released November 18, 2015, imposing suspension for a period of six months. Attorney Sayaovong defaulted in the discipline case. The complaint alleged six counts of misconduct, four counts involving two clients and two counts involving another client. In 2014 Attorney Sayaovong was publicly reprimanded for misconduct in two separate client matters. See OLR v. Sayaovong, 2014 WI 94, 357 Wis. 2d 312, 850 N.W.2d 940. The discipline does not seem consistent with the discipline imposed in other cases.

¶30 For the reasons set forth, I write about each of these cases.

¶31 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.